IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COVENTRY HEALTH CARE, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:09-cv-01009 |
| ) | |
| CAREMARK, INC., ) | Judge Thomas A. Wiseman, Jr. |
| ) | Magistrate Judge E. Clifton Knowles |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is a motion to remand filed by Plaintiffs Coventry Health Care, Inc. and twenty-two of its subsidiaries, all insurers and health maintenance organizations ("HMOs"). (The subsidiaries are referenced herein, collectively, as the "Coventry Health Plans." All the plaintiffs, collectively, are referred to as "Coventry.") For the reasons specified below, Coventry's motion to remand will be denied.

**I.  FACTUAL AND PROCEDURAL HISTORY**

In 1999 Coventry and Defendant Caremark, Inc. ("Caremark")[1] entered into the Managed Prescription Drug Program Agreement, subsequently amended in 2006 (the "Agreement"). (Compl. ¶¶ 27–28.) Pursuant to this Agreement, Caremark manages the prescription drug programs for the Coventry Health Plans. (Compl. ¶ 30.) The Agreement includes a summary of the prescription drug benefits offered under each individual Coventry Health Plan. (Compl. ¶ 31.) Among its other contractual obligations, Caremark provides Claims Processing Services for Coventry's drug plans in accordance with the Agreement and the plan design for each Coventry Health Plan. (Compl. ¶ 32.) Caremark's management of the Coventry Health Plans' prescription drug programs requires it to administer the prescription claims of Coventry members submitted by Department of Defense ("DoD") pharmacies ("DoD Pharmacy Claims"). (Compl. ¶ 34.) Pursuant to the Agreement, Caremark is authorized to process DoD Pharmacy Claims in accordance with Coventry's written direction, which, under the Agreement, is required to be in accordance with all applicable laws and regulations. (Compl. ¶ 35.)

---
[1] Caremark, Inc. was a California corporation but is now a limited liability company organized under the laws of California. (Def.'s Countercl. ¶ 1; Doc No. 23, at 1.)

The DoD is a "government agency" as that term is defined by the Agreement. (Compl. ¶ 36.) DoD Pharmacy Claims typically occur when an insured or the family member of an insured who is a member of the military fills a prescription at a DoD pharmacy located on a military base or other DoD facility. (Compl. ¶ 37.) After the member fills his or her prescription, the DoD submits a claim for reimbursement to Caremark, as the manager of Coventry's prescription plans. (Compl. ¶ 38.) Under the Agreement, according to Coventry, Caremark is contractually obligated to pay only those DoD Pharmacy Claims that are covered by the member's applicable Coventry Health Plan, "except as otherwise required by an overriding law or regulation." (Compl. ¶ 39.) Pursuant to the Agreement, after Caremark processes and pays DoD Pharmacy Claims, Caremark then invoices Coventry, typically on a weekly basis, so that Coventry can reimburse Caremark for the paid DoD Pharmacy Claims. (Compl. ¶ 40.)

But certain of the Coventry Health Plans do not provide pharmacy benefits for out-of-network pharmacy claims. (Compl. ¶ 42.) Coventry alleges that some of the DoD pharmacies are out-of-network and that Caremark, under the Agreement, is not authorized to reimburse claims submitted for prescriptions filled by out-of-network DoD pharmacies unless the insured's pharmacy plan provides benefits for out-of-network claims. Coventry alleges it discovered in or around March 2009 that Caremark had been wrongfully paying out-of-network DoD Pharmacy Claims and wrongfully seeking reimbursement for payment of those claims from Coventry. Coventry estimates that Caremark wrongfully paid uncovered DoD Pharmacy Claims, and sought reimbursement from Coventry for those uncovered claims, totaling between $600,000 and $1,000,000. (Compl. ¶¶ 45–46.) It is Coventry's position that Caremark's payment of the out-of-network DoD Pharmacy Claims constitutes a breach of the Agreement and that it is entitled to damages arising from that breach. (Compl. ¶ 65.)

In addition to its breach-of-contract claim, Coventry also seeks a declaratory judgment to resolve an "actual controversy" that has arisen between the parties, which Coventry characterizes as follows:

> Coventry contends that Caremark improperly paid out-of-network DOD Pharmacy Claims, which are not covered by Coventry's Health Plans and are not required to be covered by law. On the other hand, Caremark contends that, by law, Coventry Health Plans must cover these DOD Pharmacy Claims.

(Compl. ¶ 68.) Coventry contends that a declaratory judgment will resolve that dispute and settle the "legal relations at issue in this case." (*Id.* ¶ 69.) It therefore seeks a declaration that "Caremark must deny all out-of-network DoD Pharmacy claims that are not covered by Coventry Health Plans." (*Id.* ¶ 70.)

Coventry asserts in its Complaint that "no overriding law or regulation . . . requires that out-of-network DoD Pharmacy Claims be paid by Caremark and, ultimately, by Coventry."  (Compl. ¶ 43.) Coventry premises its authority to deny the disputed DoD Pharmacy Claims as out-of-network on 32 C.F.R. § 220.4(3),[2] which allows HMOs to exclude non-urgent, out-of-network services, including, Coventry contends, DoD Pharmacy Claims.  (Compl. ¶ 44.)

Caremark timely removed the suit from state court on the basis of federal-question jurisdiction.  In its Notice of Removal, Caremark asserts that the parties' dispute arises from disagreement between the parties over the processing of DoD claims under 32 C.F.R. § 220, upon which Coventry relies, and the statute implemented by that regulation, 10 U.S.C. § 1095.  (*Id.*)  In its motion to remand, Coventry asserts that its contract-related claims are based solely on state law, over which this Court lacks subject-matter jurisdiction.  In response, Caremark contends that it fulfilled its contractual obligations by paying the DoD Pharmacy Claims because overriding federal laws and regulations required it to do so.  Specifically, Caremark contends that, under 10 U.S.C. § 1095 and the implementing regulations[3] neither the Coventry Health Plans nor other HMOs are permitted to characterize DoD claims as out-of-network or to deny DoD Pharmacy Claims as out-of-network.  Thus, while parties appear to agree that Caremark is obligated to disregard Coventry's out-of-network classifications when federal law so requires, they disagree as to whether federal law requires DoD Pharmacy Claims to be processed as in-network even if they are not specifically covered under an individual's health plan.

## II.    LEGAL STANDARD

Removal by a defendant is valid if a plaintiff could have originally filed its suit in federal court.  28 U.S.C. § 1441(b).  In a civil action, original jurisdiction in the federal courts may be established either

---

[2] 32 C.F.R. § 220.4(c)(3) provides:
> Generally applicable exclusions in Health Maintenance Organization (HMO) plans of non-emergency or non-urgent services provided outside the HMO (or similar exclusions) are permissible.  However, HMOs may not exclude claims or refuse to certify emergent and urgent services provided within the HMO's service area or otherwise covered non-emergency services provided out of the HMO's service area.  In addition, opt-out or point-of-service options available under an HMO plan may not exclude services otherwise payable under 10 U.S.C. 1095 or this part.

[3] DoD Pharmacy claims are governed by federal statute and regulations.  The specific statutory provision implicated here is 10 U.S.C. § 1095.  Caremark argues that 10 U.S.C. § 1095(b) and 32 C.F.R. § 220.3 contain anti-discrimination clauses that make it impermissible for Coventry to exclude coverage of DoD Pharmacy Claims.

through diversity[4] or through the existence of a federal question. Federal-question jurisdiction is established when a case "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Whether a claim "arises under" federal law within the meaning of § 1331 is generally determined by the "well-pleaded complaint" rule, pursuant to which a claim may not be filed in or removed to federal court unless it is clear the plaintiff's complaint establishes that the suit arises under federal law. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9–10 (1983). A case commonly "arises under" federal law when the plaintiff's cause of action is created by federal law. *Grable & Sons Metal Prods., Inc v. Darue Eng'g. & Mfg.*, 545 U.S. 308, 312 (2005) (citing 42 U.S.C. § 1983 as a common example of a federal law that creates a cause of action). Moreover, anticipation of a federal defense, or an articulation in the complaint of why federal law prevents a certain defense, is never sufficient to establish "arising under" jurisdiction. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153 (1908).

A less frequently encountered form of federal-question jurisdiction, though recognized for nearly a century by the Supreme Court, occurs when a state-law cause of action implicates a "substantial federal interest" or "significant federal issues." *Grable*, 545 U.S. at 311, 312 (citing *Hopkins v. Walker*, 244 U.S. 486 (1917)). In a classic case applying what has become known as the "substantial federal issue" doctrine, the Court held that a state-law cause of action arises under federal law if "the right to relief depends upon the construction . . . of the Constitution or laws of the United States." *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921). The admittedly "expansive" scope of that statement has subsequently been narrowed, *Grable*, 545 U.S. at 313, but *Smith* has never been entirely overruled. Rather, as the Court noted in *Grable*, the Supreme Court has generally maintained that this branch of

---

[4] Caremark did not premise removal on diversity nor argue in its response to the plaintiffs' motion to remand that removal was appropriate on the basis of diversity. Caremark now asserts in its answer to plaintiffs' complaint that federal jurisdiction is proper under diversity. (Def.'s Answer ¶ 25; Def.'s Countercl. ¶ 4.) Caremark filed its answer to Coventry's complaint on January 20, 2010, in which it denied being a citizen of Tennessee and asserted to the contrary that it is organized under the laws of California and that its principal place of business is in Illinois. (Def.'s Answer ¶ 25; Def.'s Countercl. ¶ 4.) Caremark further denied Plaintiffs' allegation that plaintiff Personal Care Insurance is a citizen of Illinois, on the basis that Personal Care is not listed with the Illinois Secretary of State as an active or inactive corporation. (Def.'s Answer ¶ 21.) If Caremark's assertions are correct, complete diversity exists. It is unclear at this point, however, whether Caremark may have waived its ability to assert diversity as a basis for removal.

"federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* (citing *Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164 (1997); *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814 & n.12 (1986); *Franchise Tax Bd.*, 463 U.S. at 28).

In *Merrell Dow*, the plaintiffs brought state-law causes of action, including a claim for negligence, premised on the defendant's alleged violation of the Food, Drug, and Cosmetic Act ("FDCA"). The defendant removed, alleging that the plaintiffs' action was "founded, in part, on an alleged claim arising under the laws of the United States." 478 U.S. at 806. It was undisputed, however, that the FDCA itself did not create either an express or implied private right of action. Thus, the Court was confronted with the question of "whether the incorporation of a federal standard in a state-law private action, when Congress has intended that there not be a federal private action for violations of that federal standard, makes the action one 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 805 (quoting 28 U.S.C. § 1331).

The Court ultimately affirmed the Sixth Circuit's decision that federal-question jurisdiction did not lie in that case. In reaching that conclusion, the Court noted that, although it had held on prior occasions that "a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law,'" *id.* at 808 (quoting *Franchise Tax Bd.*, 463 U.S. at 9), it had always applied that exception "with caution." *Id.* at 809. Further, the Court noted that it had "consistently emphasized, in exploring the outer reaches of § 1331," that the determination of whether federal-question jurisdiction exists over nonfederal causes of action "require[s] sensitive judgments about congressional intent, judicial power, and the federal system." *Id.* at 810. With respect to congressional intent, specifically, the Court noted that absence of either an express or implied cause of action under the FDCA signaled that Congress did not intend a private federal remedy for violations of the FDCA, *id.* at 811, which ultimately led the Court to conclude that the exercise of federal jurisdiction was unwarranted in that case:

> The significance of the necessary assumption that there is no federal private cause of action thus cannot be overstated. For the ultimate import of such a conclusion, as we have repeatedly emphasized, is that it would flout congressional intent to provide a private federal remedy for the violation of the federal statute. We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of

> that federal statute solely because the violation of the federal statute is said to be a "rebuttable presumption" or a "proximate cause" under state law, rather than a federal action under federal law.

*Id.* at 812 (footnotes omitted). In sum, the Court determined that "the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[5] *Id.* at 814.

*Merrell Dow* caused a split among the Courts of Appeals as to whether the holding "always require[d] a federal cause of action as a condition for exercising federal-question jurisdiction." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 311–12 (2005). The Court granted certiorari in *Grable* to resolve the split and subsequently affirmed the Sixth Circuit's holding that a federal cause of action is not a necessary condition for a state-law claim with an embedded federal issue to arise under federal law. The Court clarified however, that irrespective of the existence of a disputed and "substantial" federal question embedded in the state action, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313–14. In other words, "the federal interest in providing a forum for an issue" must always be "weighed against the risk that the federal courts will be unduly burdened by a rush of state law cases." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007).

The Court has later emphasized that *Grable* should be read narrowly, and summarized the factors that established the significance of the federal interest at issue in *Grable* as follows: "The dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677,

---

[5] The Court gave short shrift to other arguments raised by the petitioner defendant in support of its position that federal-question jurisdiction may lie where violation of a federal statute is an element of a state cause of action, even given congressional preclusion of a federal cause of action for violation of the federal statute, finding there was no "powerful federal interest in seeing that the federal statute is given uniform interpretations" by ensuring federal review of claims involving federal statutes, *id.* at 815–16; and holding that "[t]he novelty of an FDCA issue is not sufficient to give it status as a federal cause of action; nor should it be sufficient to give a state-based FDCA claim status as a jurisdiction-triggering federal question." *Id.* at 817 (footnote omitted).

700 (2006). Federal jurisdiction was found to be lacking in *Empire Healthchoice* because the state-court tort action was between private parties, the federal issue was not dispositive, and the federal issue was too "fact-bound and situation-specific" for its resolution to affect numerous other cases. *Id.*

The Sixth Circuit has read *Merrell Dow* and *Grable* together with *Empire Healthchoice* as providing a framework for determining when the "substantial-federal-issue" doctrine applies to confer federal jurisdiction over what is otherwise a state-law claim. Pursuant to that framework, in order for the doctrine to apply, "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568 (citations omitted). It is under this framework that the existence of jurisdiction over the present dispute must be assessed.

### III. DISCUSSION

Caremark argues that Coventry's state-law breach-of-contract claim raises a substantial question of federal law because Coventry's right to relief necessarily depends on the resolution and interpretation of a substantial question of federal law—the interpretation of 10 U.S.C. § 1095 and its implementing regulations. (Doc. No. 1, at ¶ 7.) In response, Coventry asserts that its claim is based solely on state law and that this Court should remand for lack of jurisdiction. (Doc. No. 20, at 2.)

####    A.    Whether Plaintiffs' Complaint Necessarily Raises a Disputed Federal Issue

The first objective under *Mikulski* is to determine if a federal issue is necessarily raised and actually in dispute. Coventry argues that the sole issue raised by its Complaint is whether Caremark violated a private contract between the parties by improperly paying certain prescription claims. Coventry insists that it referenced "the applicable portions of the DoD Statutes and Regulations" in its Complaint only in anticipation of Caremark's raising them in formulating its defense, but that "reliance by the defense on the interpretation of a federal issue is not sufficient to confer federal question jurisdiction." (Doc. No. 26, at 2–3.)

The Court notes, however, that, although Coventry insists that interpretation of federal law is not an element of its claims, it frames those claims in a manner that suggests that compliance with federal law is, in fact, an element thereof. For instance, the basis for Coventry's demand for a declaratory

judgment is its contention that out-of-network DoD Pharmacy Claims that are not covered by Coventry's Health Plans "are not required to be covered *by law*." (Compl. ¶ 68 (emphasis added).) Coventry further alleges in its complaint that it "authorized Caremark to process such claims in accordance with Coventry's written direction, *which is required to be in accordance with applicable laws and regulations*" (Compl. ¶ 35 (emphasis added)), and that it is entitled under 32 C.F.R. § 220 to classify DoD Pharmacy Claims as out-of-network and to direct Caremark to deny payment of those claims. (Compl. ¶¶ 44–46.) Thus, it will not be merely Caremark's burden to prove its interpretation of the statute is correct in order successfully to defend itself against Coventry's claims. Rather, Coventry must prove, as part of its claim that Caremark breached the contract, that denial of the out-of-network DoD Pharmacy Claims would be in compliance with federal statute. In other words, unlike those cases cited by Coventry in support of its motion to remand, this is not a situation in which the parties merely referred to a federal statute in their contract, or incorporated a federal standard that otherwise "would not have been binding on the parties by its own force." *Oliver v. Trunkline Gas Co.*, 796 F.2d 86, 89–90 (5th Cir. 1986).[6]

In sum, it appears from the face of the complaint that a federal issue is necessarily raised and actually disputed. There is no dispute that federal law regulates how Coventry and Caremark must process DoD Pharmacy Claims and may override, as noted in the Agreement, Coventry's out-of-network classifications. Coventry believes its classification of DoD Pharmacy Claims as out-of-network is in accord with applicable federal laws and regulations. Caremark maintains that Coventry's interpretation of

---

[6] The cases cited by Coventry largely stand for the unremarkable proposition that incorporating a federal standard or merely referring to a federal statute in a private contract does not establish federal jurisdiction if the dispute does not otherwise involve a sufficiently "substantial question of federal law." *Ford v. Hamilton Invs.*, 29 F.3d 255, 258 (6th Cir. 1994) ("[M]erely referring to a federal statute . . . does not establish federal jurisdiction if the dispute does not involve a 'substantial question of federal law.'"); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 n.2 (4th Cir. 1994) ("A private contract cannot create federal question jurisdiction simply by reciting a federal statutory standard." (citing *Oliver v. Trunkline Gas Co.*, 796 F.2d 86, 89–90 (5th Cir. 1986))); *Mid-South Constructors v. Malone Mortgage Co.*, No. 3:99-CV-1460-P, 1999 WL 504904 (N.D. Tex. July 15, 1999) (granting motion to remand on the basis that to the extent resolution of plaintiff's breach-of-contract claims required interpretation of federal law, the defendant relied on such "federal provisions in a defensive posture . . . which does not form a basis for removal"); *Vencor Hosps. Tex. v. Nat'l Found. Life Ins. Co.*, No. CIV. A. 3-97-3057-P, 1998 WL 355476 (N.D. Tex. June 29, 1998) (dismissing claim for lack of subject-matter jurisdiction where the facts did not impute a sufficiently substantial question of federal law); *Eugene Iovine, Inc. v. City of New York*, No. 98 Civ. 2767(HB), 1999 WL 4899 (S.D.N.Y. Jan. 5, 1998) (same). Coventry also invokes *Jackson Transit Authority v. Local Division 1285*, 457 U.S. 15, 23 (1982), in which the Supreme Court relied upon congressional intent to find federal jurisdiction lacking, where "Congress intended that labor relations between transit workers and local governments would be controlled by state law."

the law is incorrect, and that federal law instead requires Caremark to pay such DoD Pharmacy Claims. If Coventry's interpretation of federal law is correct then Caremark is in breach of its contract; if its interpretation is not correct, then Coventry's claim fails. The issue actually disputed is the interpretation of federal law, not the interpretation of the parties' contract, and that issue is not merely a "defense" raised by Caremark to justify a breach of the Agreement.

### B. Whether the Federal Issue is Substantial

The Supreme Court has not articulated a precise test for lower courts to apply in determining when a federal issue embedded in a state-law claim should be deemed "substantial." However, the Sixth Circuit recognizes four factors that should be considered in analyzing the substantiality of a federal issue:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)

*Mikulski*, 501 F.3d at 570 (citing *Empire Healthchoice*, 126 S. Ct. at 2137; *Grable*, 545 U.S. at 313). "No single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Id.*

As for the first factor, it is apparent in this case that no federal agency is a party to this suit, nor does the dispute involve a federal agency's compliance with a federal statute. However, as Caremark argues, resolution of the issue will likely affect the ability of the DoD to seek reimbursement for its payment of pharmacy claims submitted by members of the military and others. Also, Caremark asserts that the United States would have the ability to seek to intervene in this case, as the federal issue in dispute "bears directly on the reimbursement rights of the federal government." (Doc. No. 23, at 10 n.5.) It seems that, if Coventry ultimately prevails in this lawsuit and recovers funds from Caremark for DoD Pharmacy Claims wrongfully reimbursed under the contract, then Caremark would have a right to recuperate those funds from the Department of Defense. In other words, the interests of a federal agency, though not directly involved, are nonetheless implicated.

The second factor, whether the federal issue is "important," is a purely subjective inquiry. *Mikulski*, 501 F.3d at 570. The Sixth Circuit approaches it by looking to the reach and implication of the federal issue. *Id.* Here, the issue is whether Congress has foreclosed insurance providers from

classifying DoD Pharmacy Claims as out-of-network. Coventry insists that the federal issue is not particularly important, that there is no challenge to the constitutionality of a federal statute or regulation, and that "[t]he fact that Caremark's performance (or lack thereof) may be measured by *its* compliance with a federal standard[] is not a sufficient or adequate basis to attach federal question jurisdiction." (Doc. No. 20, at 6.) Caremark, on the other hand, characterizes the issue as one in which "the federal government has a strong interest . . . as [resolution of the question] will directly impact the United States' ability to receive reimbursement for prescription drug claims from health plans like the plaintiffs[']." (Doc. No. 23, at 10.) Caremark also points out that the funds Coventry seeks to recover "are funds paid to the United States, not any funds paid to Caremark" (*id.*), and insists the government will consider the issue important, not only because it might affect the government's wallet in this particular case but also insofar as it calls into question more generally the federal government's ability to exercise its statutory right to reimbursement from third-party providers.

The Court agrees with Caremark that the issue in question appears to be relatively "important, (i.e., not trivial)." *Mikulski*, 501 F.3d at 570. It appears to implicate the government's financial interests and may provide precedent for future cases involving DoD pharmacy claims from other insurers. *See id.* (suggesting the precedential effect of a ruling upon a federal agency has a bearing upon the substantially of the federal issue, even if the agency is not a party to the suit).

As for the third factor, it is clear that resolution of the federal issue will be completely dispositive of the case. There is no dispute that the parties' relationship is governed by their written Agreement, and there is apparently no dispute that Caremark in fact paid the DoD Pharmacy Claims at issue, and sought and received reimbursement for at least some of those payments from Coventry. Whether Coventry can recuperate those sums is entirely dependent upon whether Coventry, as a matter of law, is entitled to deny DoD Pharmacy Claims as out-of-network and therefore to direct Caremark not to pay them in the first instance.

Finally, as previously suggested, resolution of the issue presented here may have precedential effect beyond the borders of this case, and it may in fact affect the government's ability to seek reimbursement of certain pharmacy claims from third-party payers. In sum, it is likely, as in *Grable*, that this Court will be in a position to decide a "nearly 'pure issue of law,' one 'that could be settled once and

for all and thereafter would govern numerous [reimbursement] cases.'" *Empire Healthchoice*, 547 U.S. at 700 (quoting Hart and Wechsler, *The Federal Courts and The Federal System* 65 (2005 Supp.)).

In considering all these factors collectively, this Court concludes that the federal issue implicated here is sufficiently substantial to justify "arising under" jurisdiction. Despite not directly involving a federal agency or its compliance with a federal law, a decision on the merits of this case may nonetheless have a substantial impact on a federal agency. Moreover, resolution of the federal issue will be dispositive of this case, and will likely have precedential effect that could greatly affect the relationship between other insurance providers and the federal government.

**C. Whether the Exercise of Jurisdiction Would Disturb Any Congressionally Approved Balance of Federal and State Judicial Responsibilities**

Caremark does not assert that the laws and regulations implicated by Coventry's claim create a cause of action for their enforcement—in fact, neither party addresses this question at all. It appears, in fact, that 10 U.S.C. § 1095 creates a cause of action *by the United States* for the enforcement of the statute against third-party payers, such as Coventry. 10 U.S.C. § 1095(e)(1). The statute does not appear to foreclose the possibility that third-party payers, such as Coventry, or Caremark for that matter, could bring a declaratory judgment action to determine the implications of the statute. Moreover, although framed as a breach-of-contract action between private parties, the present case amounts to a request for a judicial declaration as to the impact of federal law on the parties' mutual responsibilities. Considered in that light, it does not appear that jurisdiction over this action would upset any congressionally approved balance of federal and state judicial responsibilities.

Applicable precedent nonetheless seems to require that this Court speculate as to the extent to which the exercise of federal jurisdiction over the present dispute would open the proverbial floodgates to similar litigation in federal court. More specifically, courts are to consider not simply whether a decision in a particular case will open the federal courts to analogous cases—as it inevitably will—but "what cases would be analogous and how many would there be." *Mikulski*, 501 F.3d at 573.

The case at bar involves a private contract restrained by federal regulations because of the parties' relationship with the federal government. Neither the language of the contract nor the actions of the defendant are in dispute. However, whether party actions are in accord with federal law is disputed. Thus, analogous cases would likely involve situations in which: (1) a contract between private parties is

governed by federal regulations due to the parties' relationship—financial or otherwise—with a federal agency; (2) there are no factual disputes concerning the parties' actions nor legal disputes concerning the interpretation of the contract, and the sole issue to be resolved involves the construction and application of a federal statutory scheme; and (3) although a federal agency is not a named party, the government's financial interests are implicated, at least indirectly. Such analogous cases would appear to create a small category of cases that would arise under federal law, "the slim category *Grable* exemplifies." *Empire Healthchoice*, 547 U.S. at 701 (finding that the case before it did not fit into that slim category).

## IV. CONCLUSION

Despite the fact that no federal remedy is created by the statute at issue and no constitutional issue is at stake, the case at bar is one with respect to which federal jurisdiction, as in *Grable*, "would not materially affect, or threaten to affect, the normal currents of litigation" and, "[g]iven the absence of threatening structural consequences and the clear interest [of] the Government . . . in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law . . . claim." *Grable*, 545 U.S. at 319–20 and n.7. Caremark has adequately shown that Coventry's complaint necessarily raises a disputed and substantial federal issue, the resolution of which by this Court will be dispositive and will not affect the congressionally approved division of labor between the state and federal courts. The motion to remand will therefore be denied. An appropriate order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge